IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

EVELYN WALKER                                                         PLAINTIFF

V.                                       CAUSE NO.: 1:11CV231-SA-DAS

BRANDON JAMISON, in his position as
Supervisor, and JOHN BLACK, in his position
as Expeditor                                                DEFENDANTS

MEMORANDUM OPINION

The remaining Defendants in this case have filed a Motion for Summary Judgment [84] contending that Plaintiff cannot show a genuine dispute of material fact as to her claims. After reviewing the motion, response, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff, an African American female, began her employment with Foamex in 1994. Walker participated in the local union, starting out as a material handler, and moving up the ranks to an Operator 2, and ultimately, an Operator 1.[1] She was terminated in June of 2009. Plaintiff contends that during her employment she was discriminated against and terminated because of her race.

Defendants Brandon Jamison and John Black contend they cannot be held individually liable under Section 1981, but even if they could, Plaintiff has failed to meet her burden and cannot show genuine issues of material fact for trial. They have both moved for summary judgment.[2]

---

[1] Plaintiff achieved the highest paid position of those three, Operator 1, in 2006 and 2007; however, a consolidation of the factories "bumped" Walker down to a material handling position pursuant to the terms of the union contract. The "bumping" of Walker is not at issue here.

[2] On an earlier occasion, the Court dismissed FXI, Inc., the successor in interest to Foamex, as it was an improper party to this case. See Memorandum Opinion [36].

*Motion for Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

The Court has previously explained in the prior Memorandum Opinion [36], that individual liability under Section 1981 for non-State actor defendants is unsettled in the Fifth

Circuit. See Foley v. Univ. of Houston Sys., 355 F.3d 333, 338 (5th Cir. 2003); Felton v. Polles, 315 F.3d 470 (5th Cir. 2002); Oden v. Oktibbeha County, Miss., 246 F.3d 458, 464 n.5 (5th Cir. 2001). Because the Court finds that Plaintiff cannot sustain her claims against those individual defendants on the merits, the Court does not make any ruling as to the providence of individual liability under Section 1981.

Plaintiff claims she was the victim of a bogus scheme designed to result in her termination. She contends Defendants, as well as Human Resources Director Bob Brinton, conspired to get the Plaintiff terminated by intimidating her such that she improperly cut foam. In addition, Plaintiff cites several actions taken during the course of her employment as evidence of her discriminatory termination and to show that those actions constitute discrete discrimination as well. The Court analyzes both the termination and non-termination claims together below.

Employment discrimination claims bought under Section 1981 "are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964." Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999) (per curiam). Under the applicable evidentiary framework for analyzing § 1981 claims of race discrimination, a plaintiff must first establish a prima facie case of discrimination by showing that she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) . . . in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably." Glaskox v. Harris County, Tex., 537 F. App'x 525, 528 (5th Cir. 2013) (citation omitted). "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to 'articulate a legitimate, nondiscriminatory reason' for the adverse employment decision." Id. (citation omitted). Once the defendant has done so, the

burden shifts back to the plaintiff to show either (1) that the defendant's reason is a pretext for the real discriminatory purpose, or (2) "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." Id.; see also 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). Under the pretext alternative, pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Deanes v. North Miss. State Hosp., 543 F. App'x 366, 370 (5th Cir. 2013) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).

Plaintiff has shown that she was a member of the protected class and was qualified for her position. As adverse employment actions, Plaintiff cites both termination and non-termination actions. As to Plaintiff's non-termination claims, she states as a cause of action the following: (1) the failure to be promoted in November 2007; (2) discrimination due to differing job assignments; (3) disparate treatment in discipline; (4) retaliation for opposing discriminatory practices; and (5) racial harassment.

*(1) Failure to Promote*

Plaintiff challenges the promotion of a white employee, Christy White, in November of 2007. The undisputed facts show that on November 12, 2007, Foamex posted two job opening bid sheets – one for an Operator 2 position, and one for an Operator 1 position. White was awarded the Operator 2 position that Plaintiff applied for, even though she had less seniority. However, Plaintiff was awarded the Operator 1 position, the higher ranking and higher paid

4

position. Therefore, Walker was actually promoted to a higher position than her white counterpart.

To establish a prima facie case for unlawful race discrimination for the failure to promote, a plaintiff must prove that 1) she is a member of a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and, 4) after her rejection, the position was filled by someone of a different race, or it remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354-55 (5th Cir. 2001); Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000).

Plaintiff is a member of a protected class. There is also agreement between the parties that Plaintiff applied for both the Operator 2 and Operator 1 position, and was qualified for both. As opposed to being rejected for the Operator 2 position, however, Plaintiff was awarded the higher paying Operator 1 position on the same date Christy White was awarded the Operator 2 position. Therefore, the Court finds that Plaintiff has failed to satisfy the initial prima facie burden to show Foamex's failure to promote was based on her race.

As to Plaintiff's termination claim, Plaintiff is unable to show that the employment action in promoting her to Operator 1, as opposed to the less-paying Operator 2 position, was "adverse." Indeed, the Fifth Circuit has noted that "employment actions are not adverse where pay, benefits, and level of responsibility remain the same." Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999). While the Court acknowledges that the pay between the Operator 1 position was higher than the Operator 2 position, the Plaintiff has failed to show how a promotion to a higher paying position would constitute an "adverse employment action." Moreover, even if the

job duties were different, Plaintiff willingly applied for the Operator 1 position, which, pursuant to the Collective Bargaining Agreement, she did not have to do. She could have only applied for the Operator 2 position, for which she was qualified and admittedly had the most seniority. Plaintiff cannot now complain that in getting the job she applied for, she was denied a "promotion" to a lower paying position.

*(2) Job Assignments*

As to Plaintiff's termination claim, she asserts her job assignments within the Operator 1 position were adverse employment actions and contends that others similarly situated were treated differently. While in her Operator 1 position, Walker contends she was forced to perform duties and assignments her white counterparts were not required to perform. In particular, she notes that in 2007, she had to work a squeeze truck position as Operator 1, while Teri Flagg, the white comparator, was assigned to work on an HE3 machine as an Operator 1. Walker contends that she would have preferred to work on the HE3 machine. She also admits Teri Flagg was also required to work the squeeze truck assignment while at the Operator 1 position. Plaintiff also contends only forty hours were required for Operator 1 training on the squeeze truck, but that she remained in that position for over four months.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002), abrogated by Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). And, while the Fifth Circuit has recognized that "courts must consider the broad range of activities involved in promotion, compensation, and granting leave," id. (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 123-24, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)), it has stressed that

"the evidence must be evaluated to ensure that [the challenged action] does not have merely a 'tangential effect upon those ultimate [employment] decisions,'" id. (citing Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995)). In this vein, the court has emphasized that while "[d]enials of promotions, pay increases, and leave constitute ultimate employment decisions, . . . efforts to obtain work toward promotions, pay increases, or leave do not." Id. (citing Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997)).

Plaintiff cannot show that her training on the squeeze truck position within the Operator 1 position was an ultimate employment action. There is no proof that Plaintiff's job assignment within the Operator 1 position even had a "tangential effect" upon the ultimate employment decision. Moreover, Plaintiff admits that her white counterparts were required to perform the very tasks she claims she was forced to do because of her race. Accordingly, this claim has no merit.

*(3) Discipline*

Plaintiff claims she was disciplined disparately compared to other white employees. Plaintiff's disciplinary record while employed with Foamex tracks the following timeline: October 2008, Plaintiff received a "Written Warning in lieu of Suspension" for cutting foam incorrectly; December 2008, Plaintiff received a "3 Workday Suspension" for cutting foam incorrectly again; June 8, 2009, Plaintiff was given a "Suspension in Lieu of Discharge due to Last Chance Agreement" after damaging foam; and June 10, 2009, Plaintiff was terminated for failing to change the measurements on a machine, rendering the cut foam useless.

The Fifth Circuit has held that to establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical circumstances;" that is, "that the misconduct for which the plaintiff was [disciplined] was nearly

7

identical to that engaged in by … [other] employee[s]." Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 513 (5th Cir. 2001)(citation omitted). See also Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 2004 WL 21006411 (E.D. Tex). Employees who engaged in different violations of company policy are not nearly identical for purposes of Title VII. See Okoye, 245 F.3d at 513; see also Coleman v. Exxon Chem. Corp., 162 F. Supp. 2d 593 (S.D. Tex. 2001) (employee with different responsibilities, different capabilities, different work rules violations, and different disciplinary rewards is not nearly identical).

In Birdow v. Runyon, 1999 U.S. Dist. LEXIS 16246, 1999 WL 956876 (N.D. Tex. Oct. 19, 1999), the district court found that the individuals with whom the plaintiff sought to compare his treatment "must have dealt with the same supervisor, been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." 1999 U.S. Dist. LEXIS 16246 at *14; see also Snipes v. Illinois Dep't of Corr., 291 F.3d 460, 463 (7th Cir. 2002). In Mayberry v. Vought Aircraft Co., 55 F.3d 1086 (5th Cir. 1995), the plaintiff, who was black, was suspended for poor workmanship under the employer's progressive discipline system, and claimed that white employees who committed similar violations were not suspended. Although the plaintiff's evidence showed that some white employees received negative comments regarding their work, it did not demonstrate that any of those employees committed offenses of the same seriousness as those of the plaintiff. The Fifth Circuit therefore found that the plaintiff had failed to establish a prima facie case of discrimination based on a showing of alleged disparate treatment of employees of a different race. Id. at 1089.

Walker claims that other white employees did not have to sign a "last chance agreement" as she did. Her white comparator, Ray Priest was given a verbal warning, written warning, and

three-day suspension for cutting foam incorrectly. Jamison testified that Priest was not given a last chance agreement solely based on the fact that he stopped cutting foam incorrectly. Therefore, Jamison contends, there was no need for Priest to sign a Last Chance Agreement or be terminated. Plaintiff failed to rebut Jamison's contention that Priest did not make any more errors in cuts, which would therefore warrant a Last Chance Agreement. After receiving a three day suspension for incorrectly cutting foam, Plaintiff admitted to making a mistake in cutting the foam, which resulted in her suspension in lieu of discharge due to her signing a Last Chance Agreement. Accordingly, Ray Priest is not an appropriate comparator as Priest corrected his mistakes, thereby mitigating his behavior such that he did not get to the point in the disciplinary process where a Last Chance Agreement was necessary.

Gary Hodnett, another white comparator, signed a Last Chance Agreement after a series of warnings and suspension. He was terminated just over a month later for committing another policy offense. Hodnett's policy infraction was not the same as Plaintiff's. Hodnett's discipline was related to causing an accident on the pan lift truck, purposely pushing a co-worker, and failing to complete his job duties before leaving the factory. These different work rules violations cause Hodnett to be an insufficient comparator as well.

Plaintiff has failed to show that either of these two was disciplined differently than she was or that she was disciplined for a discriminatory reason. Therefore, Plaintiff's disparate discipline claim is also dismissed.

*(4) Retaliation*

Plaintiff claims she was retaliated against for filing EEOC charges against Foamex in 1999 and 2001. Those charges were filed and the investigation was terminated before either Jamison or Black was employed by Foamex. Plaintiff additionally attached several grievances

9

she filed with the local union up to two years prior to her termination. Plaintiff also seems to make an argument that she was retaliated against for filing a workers' compensation action.

To sustain a claim of retaliation, Plaintiff must show that she engaged in a protected activity, that she suffered an adverse employment action, and that a causal nexus exists between the protected activity and the employment action. <u>Green</u>, 284 F.3d at 657; <u>Mayberry v. Mundy Contract Maint. Inc.</u>, 197 F. App'x 314 (5th Cir. 2006) (noting that a plaintiff's prima facie case of retaliation is the same for claims under Title VII and Section 1981). Plaintiff has failed to show a causal connection between her termination and the EEOC charges filed eleven and nine years prior thereto. Further, Plaintiff has not shown what connection her grievances filed to the local union had to do with her termination. Lastly, Plaintiff has not addressed how the filing of a workers' compensation action is a protected activity as nothing about that filing was based on race, or why that would be connected with her termination.

*(5) Racial Harassment*

Plaintiff claims that essentially all actions against her while employed at Foamex were a form of harassment. To establish a prima facie case of hostile work environment based on race, a plaintiff must prove that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. <u>McConathy v. Dr. Pepper/Seven Up Corp.</u>, 131 F.3d 558, 563 (5th Cir. 1998).

To establish that harassment affected a term or condition of employment, a plaintiff must prove that the harassment was so severe and pervasive that it altered the conditions of employment and constituted an abusive working environment. <u>Meritor Savs. Bank v. Vinson</u>,

10

477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996). That requires a plaintiff to "prove more than a few isolated incidents of racial enmity." McCray v. DPC Indus., Inc., 942 F. Supp. 288, 293 (E.D. Tex. 1996). Instead, "there must be a steady barrage of opprobrious racial comments." Id. And, the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the conditions of employment to a sufficiently significant degree . . .; rather, a discriminatorily hostile workplace is one which is permeated with "discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971). Similarly, racial comments that are sporadic or part of casual conversation do not violate the civil rights statutes, and conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond The Civil Rights Act's purview. Harris, 510 U.S. at 21, 114 S. Ct. 367; McCray, 942 F. Supp. at 293. Courts determine whether an environment is sufficiently hostile or abusive by considering all the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating or merely offensive, and whether the conduct unreasonably interferes with an employee's work performance. Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000).

Plaintiff claims she was harassed in the denial of the promotion discussed above, subjected to disparate job duties, experienced acceleration of discipline, retaliated against for filing a workers' compensation claim, and experienced a scheme to terminate her position. All of these issues have been discussed and found lacking. Moreover, Plaintiff admits that she never heard either of the Defendants make any racially offensive comments or slurs.

11

Based upon a totality of the circumstances, the court finds that the incidents upon which Walker bases her claim of discrimination could not lead a reasonable juror to conclude that a hostile work environment existed at Foamex. Plaintiff has failed to identify evidence showing a racial motivation to any alleged "harassment."

*Termination*

As to Plaintiff's termination claim, she seeks to use all the above-cited non-termination actions to show that similarly situated persons were not treated the same as she was. Based on the analysis, the Court finds that Plaintiff has failed to satisfy her burden of putting forth evidence for a prima facie case.

Even if Plaintiff had adduced enough evidence to show that similarly situated persons outside her protected class were treated differently, she has failed to show that the Defendants' legitimate non-discriminatory reason for her termination was pretext or that the decision to terminate her was based on mixed motives, one of which was racially motivated.

Defendants cite Plaintiff's numerous mistakes in cutting foam as its legitimate non-discriminatory reason for her termination. After issuing a written warning, three-day suspension, and a last chance agreement in relation to Plaintiff's mistakes in cutting foam, Plaintiff was terminated. Plaintiff admitted to incorrectly cutting the foam and acknowledges that she should have been disciplined for it. The Court finds that Defendants have raised a sufficient legitimate non-discriminatory reason for her termination.

Plaintiff claims that Defendants "devised a scheme" designed to result in her termination. She contends that she made mistakes in cutting "because they were watching me . . . ." Plaintiff has failed to adduce evidence that any action taken by the Defendants was racially motivated. Plaintiff only complains of "how other African-Americans were treated in reference to white

Americans, which was very disturbing." She also claimed to have "witnessed several incidents as to where they were [discriminating], and you think that in this day and time, that that should not be a part, but that was Foamex's practice." However, she could not recall personally reporting any incidents where African-American employees were treated differently than white employees.

"In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Unsubstantiated assertions are not competent summary judgment evidence. Nor are conjecture or speculation adequate to satisfy the nonmovant's burden." Parker v. Tyson Foods, Inc., No. 5:05-cv-209, 2007 U.S. Dist. LEXIS 49519, 2007 WL 2021928, at *1 (S.D. Miss. July 9, 2007) (internal citations omitted). Furthermore,

> [t]he Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred is simply insufficient to support a jury verdict in plaintiff's favor. [Thus], the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.

Id. Indeed, "[t]he question is not whether an employer has made an erroneous decision; it is whether the decision was made with discriminatory motive." Germany v. Austin Coca-Cola Bottling Co., 2002 U.S. Dist. LEXIS 6848 at *23, 2002 WL 629187, *7 (N.D. Tex. April 17, 2002) (citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason . . . motive is the issue . . . .").

Plaintiff has offered no evidence that any disciplinary action against her was motivated by discrimination based on her race, nor has she provided any evidence to rebut Defendant's

legitimate, nondiscriminatory reasons for Foamex's actions. Plaintiff's claims are therefore dismissed.

*Conclusion*

Plaintiff has failed to raise genuine issues of material fact as to her Section 1981 claims against the Defendants. Accordingly, the Motion for Summary Judgment [84] is GRANTED, Plaintiff's claims are DISMISSED, and this case is CLOSED.

SO ORDERED, this the 28th day of May, 2014.

                                 **/s/ Sharion Aycock**
                                 **U.S. DISTRICT JUDGE**